1
2
3
4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   JOHN J. RASMUSSEN,

8              Plaintiff,                          No. C 14-1534 PJH

9         v.                                       **ORDER ADOPTING REPORT AND
                                                   RECOMMENDATION AND MAKING
10  DUBLIN RARITIES, et al.,                       FURTHER FINDINGS REGARDING
                                                   LATER-SERVED DEFENDANTS**
11             Defendants.
    _____/
12
          The court has reviewed Magistrate Judge Corley's Report and Recommendation
13
    ("the Report") re: motion for default judgment against defendants Ronald Witt, Anthony
14
    Saliba, and Dublin Rarities ("Dublin").  No objections were filed within the time period
15
    provided by 28 U.S.C. § 636(b).  The court finds the Report correct, well-reasoned, and
16
    thorough, and adopts it in every respect.[1]  Accordingly, plaintiff's motion for default
17
    judgment is GRANTED as to defendants Witt, Saliba, and Dublin on plaintiff's claims for
18
    intentional and negligent misrepresentation, breach of contract, conversion, and unfair
19
    business practices.  Default judgment is DENIED on plaintiff's claims for RICO violations,
20
    constructive trust, money had and received, and unjust enrichment.  The court further
21
    enters judgment against defendants Witt, Saliba, and Dublin in the amount of $598,158.70,
22
    plus plaintiff's costs of suit.
23

24  _____

25        [1]Though the court agrees with and adopts the methodology used to calculate damages
    in the Report, it does find a clerical error in the damages award calculation.  Specifically, page
26  29 of the Report finds that plaintiff is entitled to $435,500 in actual, compensatory damages,
    based on the value of plaintiffs' original coin collection ($296,645), plus the amount of the wire
27  transfer sent to defendants ($129,000), plus the amount paid for the "bait coins" which were
    ultimately sent back to defendants ($8,805).  Adding these three amounts results in a total of
28  $434,450 in actual, compensatory damages.
          Page 30 of the Report then sets forth the amount of prejudgment interest as
    $163,708.70. Adding the actual damages figure to this amount results in a total of
    $598,158.70.

1    After the Report was issued, plaintiff filed a motion to add defendants Robert

2   DiNardo ("DiNardo") and Centurion Collectibles, Inc. ("Centurion") to the default judgment.

3   DiNardo and Centurion were not part of plaintiff's original motion for default judgment,

4   because at the time of the motion's filing, service by publication was still being effected on

5   them.  Default has since been entered against DiNardo and Centurion, and plaintiff now

6   seeks to add them to the default judgment.

7    Plaintiff first argues that Centurion and Dublin were merged in November 2012,

8   "making them effectively the same company" and making the addition of Centurion to the

9   judgment purely "ministerial."  The court notes that, as early as the original complaint,

10  plaintiff pled that "Centurion merged into Dublin on or about November 2012."  Dkt. 1, ¶ 30.

11  Plaintiff made identical allegations in his motion for default judgment, and those allegations

12  were adopted in the Report.  See Dkt. 59 at 12; Dkt. 71 at 5.  Despite having multiple

13  opportunities to do so, defendants never challenged these allegations regarding the

14  relationship between Centurion and Dublin.  Thus, the court finds that Centurion and Dublin

15  are properly treated as the same entity for purposes of this default judgment.

16   Next, plaintiff argues that DiNardo is the alter ego of both Dublin and Centurion, and

17  thus, should be added to the judgment.  Under the alter ego doctrine, when the corporate

18  form is used to perpetrate a fraud or accomplish some other wrongful or inequitable

19  purpose, the courts will ignore the corporate entity and deem the corporation's acts to be

20  those of the persons actually controlling the corporation.  Sonora Diamond Corp. v.

21  Superior Court, 83 Cal.App.4th 523, 538 (2000).  Two conditions must be met in order to

22  apply the alter ego doctrine:  (1) that there is such unity of interest and ownership that the

23  separate personalities of the corporation and the individual no longer exist, and (2) that

24  failure to disregard their separate identities would result in fraud or injustice.  Bauman v.

25  Daimler Chrysler Corp., 644 F.3d 909, 920 (9th Cir. 2011) (citing Doe v. Unocal Corp., 248

26  F.3d 915 (9th Cir. 2001)).  On the "unity of interest" prong, plaintiff first notes that it is

27  sufficient to allege dominion or control of the entity by the individual, and identical equitable

28  ownership of the entity.  See Daewoo Electronics America Inc. v. Opta Corp., 2013 WL

2

1   3877596 (N.D. Cal. July 25, 2013).  Plaintiff then argues that DiNardo "exercised dominion

2   and control over Dublin" such that he, along with Witt and Saliba, "collectively controlled

3   and operated" and "were the majority interest or controlling shareholders" of Dublin.

4        On the "fraud or injustice" prong (also referred to as the "bad faith" prong), plaintiff

5   points to the allegations of the complaint, which alleges a pattern of fraud by DiNardo, both

6   before and after the Dublin-Centurion merger.

7        Overall, the court finds that DiNardo is indeed properly treated as the alter ego of

8   both Dublin and Centurion.  However, in order to add DiNardo to the judgment, plaintiff

9   need not only show that DiNardo is an alter ego of Dublin/Centurion, but must also show

10  that DiNardo had the opportunity to litigate, in order to satisfy due process concerns.  See

11  Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc., 217 Cal.App.4th 1096, 1106

12  (2013).

13       Plaintiff argues that DiNardo has had ample opportunity to control the litigation,

14  given that his company (Dublin) and business partners (Witt and Saliba) were personally

15  served with the complaint.  Plaintiff argues that the decision not to litigate was a willful,

16  tactical choice on DiNardo's alter ego's behalf.

17       The court agrees, and notes that DiNardo could have challenged the complaint's

18  allegations either when service was effected, or when the default judgment motion was

19  filed, or when the Report issued, but opted not to do so at any of those times.  Thus, the

20  court finds that any due process concerns have been satisfied with respect to DiNardo.

21       As mentioned above, the court has adopted the Report in every respect, including its

22  evaluation of the merits of plaintiff's asserted claims.  Given the finding that plaintiff's

23  intentional misrepresentation claim against Dublin has merit, combined with the court's

24  finding that DiNardo is the alter ego of Dublin, and the finding that Dublin and Centurion are

25  properly treated as the same entity, the court finds that default judgment can be entered

26  against DiNardo and Centurion on the intentional misrepresentation claim.  Because the

27  intentional misrepresentation claim, by itself, is sufficient to warrant imposing the full

28  amount of the judgment, the court need not reach the merits of any other claims against

1  DiNardo and Centurion.  Thus, the court hereby enters default judgment against DiNardo

2  and Centurion, along with Witt, Saliba, and Dublin, in the amount of $598,158.70.

3       **IT IS SO ORDERED**.

4  Dated: February 27, 2015

5

6  _____
   PHYLLIS J. HAMILTON
   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28